John A. EASTWOOD and Eastwood Mechanical Contractors Company, Inc., Plaintiffs,

and

William W. Watts and Harlan C. Watts, Individually and d/b/a W & W Construction Company and K & K Construction, Company, Defendants,

v.

The GLENS FALLS INSURANCE COMPANY and Marine Office of America Corporation, Intervenors.

Supreme Court of Tennessee.

Feb. 14, 1983.

Kemper B. Durand, Rosenfield, Borod & Kremer, P.C., Memphis, for plaintiffs.

Ronald E. Cardwell, Hoffman & Cardwell, Memphis, for intervenors.

Jerome Turner, Wildman, Harrold, Allen, Dixon & McDonnell, Robert L. Green, Neely, Green & Fargarson, Memphis, for defendants.

### OPINION

FONES, Chief Justice.

This is a T.R.A.P. 9 Interlocutory Appeal wherein the trial judge certified the following question:

> Where an insured and a tort feasor enter into a settlement agreement in good faith, subject to the insured obtaining a release from his insurance carrier to which the insured has given a subrogation agreement, and where this proposed settlement will not reimburse the insured for his entire loss, may the settlement be consummated without further liability by

either the insured or the tort feasor to the insurance company?[1]

Plaintiffs, John Eastwood and plaintiff Eastwood's Mechanical Contractors Company, Inc., sustained a fire loss to Eastwood's building and its contents which belonged to the company. The loss, for the purpose of this appeal, was said to be "at least $237,418." The building was insured by Glen Falls Insurance Company, with policy limits of $83,000, and by the Marine Office of America with policy limits of $700. Plaintiffs filed a proof of loss with both companies claiming building and contents loss in the sum of at least $237,418, and each company paid its policy limits. Plaintiffs gave each company a subrogation receipt that warranted that no settlement with a tort feasor had been made or would be made without the written consent of the insurance companies. The policies contained the standard clause granting the insurers' subrogation rights.

Thereafter plaintiffs filed a negligence action against W & W Construction Company, a general contractor employed to erect an addition to Eastwood's building, and against K & K Construction Company, a sub-contractor of W & W Construction Company. Glen Falls Insurance Company and Marine Office of America intervened in the suit to protect their subrogation rights. Settlement negotiations with the insurance carriers for the two construction companies resulted in a total offer of $120,000 for the release of the two construction companies. Plaintiffs were willing to accept that offer provided Glen Falls Insurance Company and Marine Office of America would relinquish their subrogation rights and give written consent to that settlement. Both companies refused to waive their rights or consent to the settlement.

Plaintiffs then filed an amended complaint wherein they alleged that defendants had offered to pay $120,000 in settlement and that they wanted to accept their offer, provided no subrogation payment had to be made, but that the intervening fire insurance companies had refused to agree. Defendants and the intervenors answered the amended complaint by admitting all of the material factual allegations whereupon plaintiffs moved for a summary judgment. Plaintiffs insisted that this Court's decision in *Wimberly v. American Casualty Company,* 584 S.W.2d 200 (Tenn.1979), required the trial court to hold that plaintiffs could accept the settlement offered by the tort feasors of $120,000 without the consent of Glen Falls and Marine and that plaintiffs' insurers had no subrogation rights in that settlement because $120,000 plus $83,700 paid by the fire insurance companies did not make plaintiffs whole.

The trial court denied plaintiffs' motion for summary judgment, with the comment that there were "material differences" between the instant case and *Wimberly,* but granted plaintiffs' motion for an interlocutory appeal and framed the issue as stated in the first paragraph above. The Court of Appeals affirmed the trial court.

We granted the T.R.A.P. 9 appeal since the parties and the Court of Appeals have expressed misconceptions of our decision in *Wimberly.* The result reached by the trial court and the Court of Appeals was correct and the answer to the issue presented is, "no."

In *Wimberly,* the settlement with the tort feasor had been consummated with the consent of the fire insurance companies before the lawsuit was brought. The facts stated in the opinion were as follows: that the restaurant owned by the Wimberlys sustained an "undisputed fire loss of $44,619.10;" that the Wimberlys had a "total of $15,000 fire insurance coverage with the defendant insurance companies" which was paid to them; that the fire was due to the negligence of Shelia McLemore whose insurance carrier had paid the policy limits of $25,000; that the Wimberlys and their two

---

1. The issue was not accurately framed. The hypothesis should have included the underlined portion of the following: "[a]nd where this proposed settlement, *plus the fire insurance policy proceeds,* will not reimburse the insured for his entire loss . . . ." We consider the issue as corrected in that manner.

fire insurance companies, American Casualty and New Hampshire Insurance Company, "executed a joint release" of the tort feasor, and were issued a check in the sum of $25,000 payable to the insured and the insurers; that the parties pro-rated the $25,000 settlement; and that thereafter the Wimberlys brought suit against American Casualty Company and New England Insurance Company for the pro-rata sums they received from the settlement. In short, the Wimberlys sought to realize all of the $25,000 settlement, upon the theory that the subrogation rights of the fire insurance companies did not mature until the insured recovered the full amount of the fire loss. The Wimberlys had not fully recovered because the $15,000 policy proceeds and $25,000 from the tort feasor totalled $40,000, their loss being $44,619.10.

Thus, the litigation in *Wimberly* began after the fire insurance companies had consented to and participated in a settlement with the tort feasor that they knew would be inadequate when it was added to the proceeds of the fire policies to cover the full amount of their insured's fire loss. The issue presented in the instant case, in essence being whether the insured can settle with a tort feasor without the consent of the insurer when the insurance proceeds and the settlement proceeds are less than the loss sustained, was not involved in *Wimberly*. Nothing that was said in *Wimberly* diminishes or in any measure affects the obligation of the insured to obtain the written consent of his or her insurer who has subrogation rights prior to a settlement with the tort feasor. *Wimberly* clearly stands for and all that it stands for is that when an insured has been paid the policy limits of his or her fire policy and the insured and his or her fire insurance carrier have agreed to a settlement with a tort feasor that when added to the fire insurance proceeds is less than the insured's fire loss, the insurer's subrogation rights cannot be enforced, because the insured has not been made whole.

The Court of Appeals made the following comment:

"This Court cannot tell from *Wimberly* whether being 'made whole' means to be done so one hundred percent by the third party tort feasor or by a combination of the tort feasor's funds and the insurer's funds."

The answer to that question is found in the statement of the issue in the second paragraph of the *Wimberly* opinion wherein we said the question to be determined was the subrogation rights of the insurance companies "when the *total* recovery of the insured from the tort feasor and the fire insurance policies is less than the casualty loss." We do not find any language in *Wimberly* that explicitly or implicitly suggests that only the proceeds derived from a tort feasor would be used to determine when the insured had been made whole.

The result reached by the Court of Appeals is affirmed for the reasons stated herein. This cause is remanded to the trial court for further proceedings consistent with this opinion. Costs are adjudged against plaintiffs, John Eastwood and Eastwood Mechanical Contractors Company, Inc.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.