IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 18, 2007 Session

BEP SERVICES, INC. v. CAREFIRST FOUNDATION, INC. f/k/a
PROVIDENT FOUNDATION, INC.

A Direct Appeal from the Chancery Court for Shelby County
No. CH-04-0406-3  The Honorable D. J. Alissandratos, Chancellor

No. W2006-02059-COA-R3-CV - Filed August 21, 2007

Plaintiff appeals the grant of summary judgment to defendants in its suit filed on the theory of equitable subrogation.  The trial court found that the undisputed facts established that plaintiff acted as a volunteer and proved no fraud, accident or mistake.  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Bruce S. Kramer and Scott A. Kramer of Memphis, Tennessee for Appellant, BEP Services, Inc.

Stephen W. Ragland, Clarence A. Wilbon, and Simon C. Bieber of Memphis, Tennessee for Appellee, CareFirst Foundation, Inc. f/k/a/ Provide Foundation, Inc.

**OPINION**

I.      Facts and Procedure

CareFirst Foundation, Inc. ("CareFirst," "Defendant," "Appellee") and BEP Services, Inc. ("BEP," "Plaintiff," "Appellant") entered into an agreement for BEP to provide management services to a health care facility on July 29, 1996.[1]  The parties agree that pursuant to that management agreement, BEP agreed to accept control and responsibility for the day-to-day operations and management of Arnold Home, a nursing facility owned by CareFirst.

---

[1]The Court notes that the record in this case does not include copies of any of the agreements that are involved in this case.  The scope of our factual review is limited to the contents of the appellate record. *Richmond v. Richmond*, 690 S.W.2d 534, 535 (Tenn. Ct. App. 1985). The appellant has the responsibility to prepare a fair, accurate, and complete record on appeal. *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710 (Tenn. 2005).  In this case, the appellant did not ensure that a copy of the agreements were included in the record before us, and therefore, this Court is unable to address the exact terms of those agreements.

BEP and CareFirst later entered into a series of contracts. These included a January 2000 Settlement Agreement, an August 2000 Agreement for Sale and Transfer of Arnold Home Assets, and a December 2000 Agreement Regarding Sale and Transfer of Arnold Home Assets. These agreements effectively resulted in the transfer of ownership of the Arnold Home facility and its assets from CareFirst to BEP, effective January 1, 2001. Both parties agree that each of the three 2000 agreements specified that the 1996 Management Agreement was to remain in full effect until the transfer of ownership was complete.

During the time period in which BEP managed the Arnold Home but before it assumed ownership of the facility, the Arnold Home incurred various operating expenses, including accounts payable to vendors, salaries and accrued vacation time. BEP was aware that pursuant to the Management Agreement, BEP was not responsible for or legally obligated to pay those expenses. Nonetheless, after assuming ownership of the Arnold Home, BEP paid the expenses, claiming that it was necessary to pay those expenses in order to continue operations and to encourage vendors to continue to do business with the Arnold Home.

On February 27, 2004, BEP filed a Complaint with the chancery court and asserted two causes of action: a claim for breach of contract and a claim for "monies due and owing." On December 21, 2005, CareFirst filed a motion for summary judgment on both claims. At the hearing for that motion, the court agreed to allow BEP an opportunity to amend its complaint. On April 7, 2006, BEP filed its Amended Complaint, replacing its original two causes of action with claims of unjust enrichment and equitable subrogation. BEP claimed that it was entitled to reimbursement for paying certain expenses relating to the operations of the Arnold Home that it was not obligated to make. On June 9, 2006, CareFirst filed a second motion for summary judgment, arguing that BEP could not satisfy the necessary elements of either claim.

A hearing was held on CareFirst's motion for summary judgment on July 21, 2006. At the conclusion of that hearing, the trial court stated:

> As a general principle, this Court would think under the right fact circumstance of true exigency that there could be an equitable exception that can be reasoned with and balanced with the holding of the Supreme Court. However, this is not that case.
>
> For reasons best known to these plaintiffs, they did contract on the front end, and appropriately so, and protect themselves contractually as to not being liable to these third-parties.
> They defend, however, they went on and commenced to voluntarily pay, and the Court could have envisioned an exigent circumstance in a short period of time, but then they went and let two years go by. That is not exigent.
>
> That is a calculated business decision on the cost benefit analysis of why is it that we want to rush to the courthouse, and let us take

some time – and because that does not fall into a potential exigent exception, the Court, therefore, must follow the basic case law.

The Court is of the opinion that this is a harsh result. However, it is the obligation of this Court to follow the law, since that is the first doctrine in equity, which is, equity follows the law.

There are other instances where this Court has been stripped of equitable discretion in other matters as a result of harsh case law, but be that as it may, it is nonetheless the law. Accordingly, therefore, the motion for summary judgment must be granted.

On August 14, 2006, the trial court entered its order granting CareFirst's motion for summary judgment on all claims asserted by BEP. BEP filed a notice of appeal on September 5, 2006.

## II.     Issues

BEP Services raises the following three issues for appeal as stated in its brief:

1.     Whether the Trial Court erred in granting Defendant's Motion for Summary Judgment holding that BEP voluntarily paid the debts of CareFirst, and thus is not entitled to equitable subrogation where BEP paid the debts of Provident out of or pursuant to a legal duty for purposes of Tennessee equitable subrogation law.

2.     Whether one who pays the debt of another pursuant to a moral obligation should be considered a "volunteer" for purposes of Tennessee equitable subrogation law.

3.     Whether one who pays the debt of another in order to protect ones reputation should be considered a "volunteer" for purposes of Tennessee equitable subrogation law.

## III.     Analysis

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The moving party for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 926 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn. 1968) (citation omitted). In its most basic form, subrogation means that party A is substituted for party B and party A can then raise the rights party B had against party C. *See Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999). Legal or equitable subrogation is based upon basic principles of equity and justice and allows a person who pays the debt of another to assume the creditor's place with respect to the debt. *Castleman Constr. Co.*, 423 S.W.2d at 674.

"[I]n the absence of legal compulsion to pay the debt of another, voluntary payment of another's debt, absent fraud, accident, mistake, or by contract with the payee, does not entitle one to subrogation." *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 538 (Tenn. 2006) (citing *Walker v. Walker*, 200 S.W. 825 (Tenn. 1918). A mere volunteer or stranger is not entitled to subrogation where he pays without an assignment of the debt or an agreement for subrogation. *Id.* A "volunteer" or "stranger" is "one who has no obligation or liability to pay the debt and has no interest in the property affected by the debt. Some compulsion to pay, such as legal process, is ordinarily essential and sufficient to support subrogation." *Id.* In Hubble, our Supreme Court further explained that a party is considered a volunteer unless it makes a payment because of a judicial decision, a contractual duty, or some other legally enforceable means. *Hubble*, 188 S.W.3d at 538.

In this case, BEP paid the operating expenses at a time in which it was the owner of the Arnold Home in order to ensure the success of its own business operations. BEP does not argue that it made those payments pursuant to any legally enforceable means. Rather, BEP states that it made the payments in order to induce vendors to continue to do business with the Arnold

-4-

Home and in order to continue to keep the Arnold Home in operation. Therefore, BEP meets the definition of a volunteer for purposes of subrogation law. Further, BEP does not allege any fraud, mistake, or accident which induced these payments.

Because BEP acted as a volunteer in making the payments and because BEP does not allege fraud, mistake, or accident, BEP is not entitled to subrogation in this matter. Therefore, the trial court was correct in granting summary judgment in favor of CareFirst.

BEP cites caselaw from other jurisdictions to support its claims that it should not be considered a volunteer because it acted pursuant to a moral obligation to act for the benefit of the Arnold Home residents, because it acted pursuant to a fiduciary duty that it had to its patients, and because it acted to protect an economic interest. However, these arguments directly contradict established law in Tennessee. The Tennessee Supreme Court has established that a party who meets the definition of a volunteer is entitled to subrogation only in the instance of fraud, accident, mistake, or by contract with the payee. *Hubble*, 188 S.W.3d at 538. Therefore, we find these arguments to be without merit.

## IV.    Conclusion

For the foregoing reasons, we affirm the order of the trial court. Appellee's request to find this a frivolous appeal is denied. Costs of this appeal are assessed against the Appellant, BEP Services, Inc., and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.