IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

# GREY GRAVES v. COCKE COUNTY, TENNESSEE and COCKE COUNTY SCHOOLS

**Appeal as of Right from the Circuit Court for Cocke County**
**No. 24,043    Hon. Richard R. Vance, Judge**

---

**No. E1999-01387-SC-R3-CV - Decided June 30, 2000**

---

This workers' compensation appeal presents two issues for review. The first is whether an employer is entitled to a credit under Tenn. Code Ann. § 50-6-112 for future medical payments made on behalf of an employee when the employer and employee settle their workers' compensation suit for a lump sum award. The second issue is whether the made whole doctrine applies to workers' compensation cases. For the reasons explained hereafter, we answer both questions in the negative. Accordingly, the trial court is affirmed.

**Rule 3, Tenn. R. App. P.; Judgment of the Circuit Court Affirmed.**

DROWOTA, J., delivered the opinion of the court, in which Anderson, CJ., Birch, Holder, and Barker, JJ. joined.

Gerald L. Gulley, Jr. and Elizabeth A. Townsend, Knoxville, Tennessee, for defendants-appellants, Cocke County, Tennessee and Cocke County Schools.

Gordon Ball, Knoxville, Tennessee, for plaintiff-appellee, Grey Graves.

## OPINION

The employee in this workers' compensation case, Grey Graves, worked as a maintenance supervisor for the Cocke County school system. On July 12, 1996, the employee severely injured his hip and knees in a car accident that occurred in the course and scope of his employment. He subsequently filed suit against his employer, Cocke County and the Cocke County school system, for workers' compensation benefits.

While the employee's workers' compensation claim was pending, the employee filed suit against the driver of the other car involved in the accident. The employee settled that suit for $138,000. In the workers' compensation suit, the parties agreed that the employee was totally and permanently disabled and should receive a lump sum award of $122,140, less an amount for temporary total benefits erroneously paid to the employee after he reached maximum medical

improvement. The parties also agreed that the employee would pay the employer $77,998.57, representing the employer's subrogation interest for medical expenses that had already been paid. The parties could not agree on whether the employer was entitled to an additional credit for future medical expenses paid on the employee's behalf. The parties agreed to have the trial court resolve that issue.

After holding a hearing, the trial court held that the employer was not entitled to a credit for future medical payments made on behalf of the employee. The trial court explained its decision as follows:

> The issue as to future medicals is always an uncertainty. You can't calculate what future medical bills will be. You can't calculate if there will be future medicals and the extent and nature of it because it's in the future, as you could if payments were being made on a regular basis you would know specifically that it would be a certain amount.
> . . . .
>
> Future medicals are incalculable at this time. They're speculative, they could go on forever. Courts favor resolutions of lawsuits which would impose some finality to the judgment. In such a case, Mr. Graves would be required to keep his money in the bank and possibly pay back his employer at unknown and uncertain times in the future and unknown and uncertain amounts, that's a possibility. So this Court is going to find that the Act does not require subrogation for future medicals which are unknown and uncertain.

Thus, the trial court found that the credit provided for in Tenn. Code Ann. § 50-6-112 did not encompass future medical payments when the parties settled for a lump sum award. The employer appealed the trial court's decision. The case was argued before the Special Workers' Compensation Appeals Panel, but transferred to the full Supreme Court before the Panel issued its decision.

The first issue we must decide concerns the employer's credit for future medical payments under Tenn. Code Ann. § 50-6-112. Tenn. Code Ann. § 50-6-112(a) permits an injured worker who receives workers' compensation benefits to pursue an action against a third-party tortfeasor.[1] In order to prevent the injured worker from receiving a double recovery, Tenn. Code Ann. § 50-6-112(c) provides for a subrogation lien in favor of the employer against any recovery by the employee

---

[1]Tenn. Code Ann. § 50-6-112(a) provides as follows: "When the injury or death for which compensation is payable under the Workers' Compensation Law was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, or such injured worker's dependents, shall have the right to take compensation under such law, and such injured worker, or those to whom such injured worker's right of action survives at law, may pursue such injured worker's or their remedy by proper action in a court of competent jurisdiction against such other person."

from the third-party. The pertinent part of the statute provides as follows:

> (c)(2) In the event the net recovery by the worker . . . exceeds the amount paid by the employer, and the employer has not, at the time, paid and discharged the employer's full maximum liability for workers' compensation under this chapter, the employer shall be entitled to a credit on the employer's future liability, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer.

> (3) In the event the worker . . . effects a recovery, and collection thereof, from such other person, by judgment, settlement or otherwise, without intervention by the employer, the employer shall nevertheless be entitled to a credit on the employer's future liability for workers' compensation, as it accrues under this chapter, to the extent of the net recovery.

Tenn. Code Ann. § 50-6-112(c)(2), (3).

In this case, the employer makes several arguments challenging the trial court's decision that the credit provided for by Tenn. Code Ann. § 50-6-112(c) does not include future medical payments when the parties settle for a lump-sum award. First, the employer points out that the statutory language is not limited to fixed or known amounts, but provides for a credit based on the employer's "full maximum liability." Tenn. Code Ann. § 50-6-112(c)(2). Since future medical expenses are part of the employer's "full maximum liability" under the parties' settlement, the employer contends that it is entitled to a credit for future medical payments. The employer also maintains that its interpretation of Tenn. Code Ann. § 50-6-112(c) should be adopted because limiting the credit to known or fixed amounts would lessen or even eliminate an employer's incentive to settle when the employee has a claim pending against a third-party. The employer further claims that its construction of Tenn. Code Ann. § 50-6-112(c) is consistent with the legislative intent to place the economic loss on the third-party tortfeasor as "the author of the misfortune." Plough, Inc. v. Premier Pneumatics, Inc., 660 S.W.2d 495, 499 (Tenn. Ct. App. 1983) ("By enacting [Tenn. Code Ann. § 50-6-112] we feel that the Legislature clearly intended to place the pecuniary loss on the author of the misfortune, thus allowing both employer and employee to benefit.").

In addition, the employer relies on the language in Tenn. Code Ann. § 50-6-112(c)(2) which states that the "employer shall be entitled to a credit on the employer's **future liability**, as it accrues, to the extent the net recovery collected exceeds the amount paid by the employer." (Emphasis added). To the extent that the employee incurs future medical expenses, those expenses are part of the employer's "future liability" for which the employer is due a credit under the statute. Thus, the employer maintains that the trial court's interpretation of the statute is inconsistent with the legislative intent to reimburse an employer "to the extent of [the] employer's total obligation" under the workers' compensation law. See Beam v. Maryland Cas. Co., 477 S.W.2d 510, 513 (Tenn. 1972). If the trial court's decision stands, the employer would be denied its opportunity to recoup its "total obligation" to the employee.

Finally, the employer argues that the trial court's decision will give employees an incentive

to designate a large portion of their settlement with a third-party tortfeasor as future medical expenses in order to place those expenses out of the employer's reach. Thus, employees will have a convenient way of circumventing the employer's subrogation rights.

In seeking to uphold the trial court's interpretation of Tenn. Code Ann. § 50-6-112(c), the employee argues that future medical expenses should not be included in the statutory credit because such expenses are, by their very nature, unpredictable and incapable of being calculated. Therefore, including such benefits in the employer's statutory credit would, according to the employee, inject an element of uncertainty into the award that could effectively prevent employees from spending any of the funds because of the possibility that some or all of the award may have to be returned to the employer at an uncertain time in the future. The employee also argues that an employer who agrees to a lump sum settlement should bear the risk of loss for future medical expenses given the importance of finality of lump sum awards. See Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 98 (Tenn. 1993) (observing that "the balance in workers' compensation cases involving lump-sum awards is weighted in favor of finality"). According to the employee, the employer's interpretation of the statute would effectively eliminate the finality of judgments in many workers' compensation cases.

Although both parties have presented plausible arguments in support of their positions, we are persuaded that the employee's construction of Tenn. Code Ann. § 50-6-112(c) is the one that should be adopted. Employees should not be placed in the difficult position of not being able to spend their workers' compensation benefits for fear that some or all of those benefits may have to be returned to the employer if needed medical treatment is sought. If the employee is unwilling or unable to pay the employer when the employer seeks reimbursement from the employee, the employer could obtain a judgment against the employee and presumably be in a position to collect that judgment on the employee's personal assets and whatever income stream the employee might have at the time. This situation is an untenable one that should be avoided. Although the employer in this case responds to this concern by noting that it would not seek to have the employee return benefits already paid, there is no legal impediment preventing the employer from doing so. Other employers may not hesitate to do just that. And even accepting the employer's argument that it is seeking a credit against future medical payments and not reimbursement from benefits already paid, it is certainly foreseeable that some workers will not seek medical treatment or will be denied medical treatment because they will have to pay for it themselves. Such a result is inconsistent with the policy underlying the workers' compensation system of providing injured workers with needed medical treatment.

Furthermore, we believe that the trial court's concern about finality of judgments is a compelling one. This Court has repeatedly expressed concern that reopening workers' compensation agreements frustrates the legitimate goals of judicial economy and finality of settlements. See, e.g., Cox v. Martin Marietta Energy Sys., 832 S.W.2d 534, 538 (Tenn. 1992); Hale v. CNA Ins. Co., 799 S.W.2d 659, 661 (Tenn. 1990); but see Brewer v. Lincoln Brass Works, Inc., 991 S.W.2d 226 (Tenn. 1999). Many subrogation cases like the one at bar would be in and out of court for years - in some instances every time the employee needed medical treatment - if the employer's interpretation of Tenn. Code Ann. § 50-6-112(c) was adopted. The employer's position is inconsistent with the goals

of judicial economy and finality of settlements.

Accordingly, we hold that the "credit on the employer's future liability" as used in Tenn. Code Ann. § 50-6-112(c)(2), (3) does not encompass future medical payments when the parties have settled the case for a lump sum award. This construction of the statute recognizes the importance of finality in lump sum cases and avoids the other problems noted above.

The second issue in this case is whether the made whole doctrine applies to workers' compensation cases.[2] This issue is controlled by our decision in <u>Castleman v. Ross Engineering, Inc.</u>, 958 S.W.2d 720 (Tenn. 1997). In <u>Castleman</u>, the employee argued that enforcement of the employer's subrogation rights under Tenn. Code Ann. § 50-6-112 was conditioned on the employee being made whole by the third-party tortfeasor. In rejecting the employee's argument and holding that the made whole doctrine does not apply to workers' compensation cases, we stated:

> The statute [Tenn. Code Ann. § 50-6-112(c)] creating the subrogation claim does not by its terms condition the claim upon the employee obtaining a full recovery of damages sustained. The subrogation lien attaches to "the net recovery collected" and secures the amount "paid" by the employer or the amount of the employer's "future liability, as it accrues." It appears that, under the statute, the subrogation lien attaches to any recovery from the tortfeasor "by judgment, settlement or otherwise." Consequently, even if under equitable principles of subrogation the employer was not entitled to assert the subrogation lien, the statute specifically creates that right.

<u>Castleman</u>, 958 S.W.2d at 724 (citation omitted). Thus, <u>Castleman</u> stands for the proposition that the made whole doctrine does not apply to workers' compensation cases.[3]

The employee in the present case argues that <u>Castleman</u> should be overruled. According to the employee, <u>Castleman</u> was wrongly decided because it allows employers to receive a windfall since they can assert their subrogation rights even though the employee has not been fully compensated. This argument was implicit in the employee's argument in <u>Castleman</u> that the employer not be given the statutory credit until the employee is made whole. The Court in <u>Castleman</u> rejected the argument in light of the language in Tenn. Code Ann. § 50-6-112(c). We are compelled to do the same in the present case because when statutory language is plain and unambiguous, this Court must not apply a construction apart from the words of the statute. <u>See</u> <u>State v. Nelson</u>, __ S.W.3d __ (Tenn. 2000). Thus, we hold as we did in <u>Castleman</u> that the made whole

---

[2]The made whole doctrine refers to the injured party receiving full compensation for his or her losses as a prerequisite for allowing an insurer to exercise its subrogation rights. <u>See</u> <u>York v. Sevier County Ambulance Auth.</u>, 8 S.W.3d 616, 619 (Tenn. 1999).

[3]This Court has, however, applied the made whole doctrine in non-workers' compensation cases. <u>See</u>, <u>e.g.</u>, <u>York v. Sevier County Ambulance Auth.</u>, 8 S.W.3d 616 (Tenn. 1999); <u>Blankenship v. Estate of Bain</u>, 5 S.W.3d 647 (Tenn. 1999).

doctrine does not apply to workers' compensation cases.

In view of the foregoing discussion, we conclude that the employer is not entitled to a credit under Tenn. Code Ann. § 50-6-112(c) for future medical payments made on the employee's behalf. Further, we reiterate the holding of <u>Castleman</u> that the made whole doctrine does not apply to workers' compensation cases. Accordingly, the trial court is affirmed. Costs of this appeal are taxed to the employer.